Good morning. May it please the court, my name is Stuart Carlin. I'm representing the appellant in this matter, Peter Cohn. First I'd like to state the obvious, which is the standard in this particular case, and it's appellant's view that on a motion to dismiss, the issue, the precise issue for the court is everything that is said in the four corners of the complaint, when construed in a light most favorable to the plaintiff, does the plaintiff state a claim for relief? And I would respect, as you can see from the appendix, it's just the amended complaint. There are no affidavits. There are no job descriptions attached. So the only thing that's before the court is the, there's no chancellor's regulations. There's no collective bargaining agreement. The only thing that's before the court at this point is the complaint, which specifically states that it was not part of his job responsibilities to complain to the New York State Department of Education. He's a New York City teacher. Well, we do know from the complaint that he was one of several earth sciences teachers who was setting up the standardized regents exam and noticed that one of his fellow teachers seemed to have students who had achieved perfection in an unusual degree and pointed that out and, as it were, blew a whistle on this. And then the question is, is he speaking as a citizen or is he speaking as an employee? And it seems to me if you're a teacher and you believe that cheating is going on, why isn't it part of your responsibility as a teacher to raise the issue? Well, he did raise the issue internally. That's correct. And maybe it was, and maybe it could have, a better argument could be made as, maybe a better argument could have been made if he had stayed internally. There's nothing to suggest that he had to report to the New York State Department of Education. There's not one bit of evidence to, on this motion to dismiss, to suggest that he has that duty to do so. This is on a motion to dismiss, Your Honor. They didn't point to a chancellor's regulation. They didn't point to the collective bargaining agreement. They haven't pointed to anything that required my client to do that. Does there have to be some explicit duty to make this communication? Or is it enough that it's within the range of general responsibilities of people in an enterprise to blow the whistle on fraud? Well, Your Honor, the short answer is, under the Matthews case, this case that was recently decided, it has to be part of its official job responsibilities. We don't know what its official job responsibilities are as being part of a grade team in Regents. We don't know that because there's nothing in the record to suggest what its official job responsibilities are. You're just, with all due respect, you're surmising that that's part of his duty to report this to the New York State Department of Education. There's nothing to suggest that. Moreover, this will chill speech. I mean, I represent a lot of teachers, and if they come to me and they say, if I go to the Department of Education, will this be protected? I'll go, the only thing you may have a right to do is to file an internal grievance. You know, good luck on your grievance. This will absolutely put a chill, as a practical matter, on any free speech for somebody to go to the Department of Education. And there's a civilian analog. You're saying that your client was speaking as a citizen. Well, the answer is yes. And there's a line of cases that say there could be a dual purpose. He could be speaking as a citizen. There's nothing that required him to do so. That's what the allegations in the complaint are. There's nothing to refute that specific allegation. Moreover, it's a civilian analog. This is a — this is something not just available to him in and of itself. It's not just available to him. It's available to the general public. The Matthews case was very, very specific there. You had to deal — you dealt with a police officer, and they had internal regulations that they had a duty to respond to, a quota system. And in Matthews, it remained internal. In this particular instance, Your Honor, with all due respect, we have somebody — we have this on a motion to dismiss. We don't have anything else. We have a civilian analog. There's nothing to suggest he had a duty as a teacher to report this to the New York State Department of Education. Thank you. Okay. Thank you. We've reserved a couple minutes for rebuttal. We'll hear you. Good afternoon, Your Honors. Eric Lee for the City of Police. The district court correctly dismissed Cohn's First Amendment claim because the First Amendment does not protect speech made pursuant to employee's duties. I think it's clear from the complaint that the key allegations here are that Mr. Cohn had a responsibility to set up the test, make the answer key, and he was part of the grading team. And so it's reasonable to infer that his job duty was to ensure that the Regents' exam was fairly and properly graded. That's all that the Garcetti analysis requires here. It's a very practical — Well, there's no question he had to do fair and proper grading, but the question is, was he responsible for supervising the grading that other teachers were doing? I don't know that, Your Honor, I don't know that it necessarily hinges on whether he was a supervisor on the grading team or not. For example, it's not pledged, it's not alleged in the complaint what role he played, but in the — if I could just point to the O'Connor decision that the district court below had cited and also cited by the parties here, in that case the teachers were grading at round robin style. They obviously didn't grade their own students' exams, but the setup could have been one where they had to grade another teacher's. Again, I don't think that this case hinges on whether he was a supervisor or not, because it's clear that he was tasked and paid to perform a job to serve on the grading team for the Regents' exam in a subject matter that he taught for an exam that he set up, for an exam that he made the answer key to, and then he then graded this exam. It is within what he had to do when he made this speech alleging that there was impropriety made by one of his fellow teachers. Kennedy, would you agree that it would be a different animal altogether, just as a matter of analysis, if the complaint had related not to a specific violation by one Regents' teacher, for lack of a better term, but systemic cheating in connection with the Regents' examination throughout the State? Yes, Your Honor. I do think you would make it a closer call, and it would be closer to what this Court had said in Matthews, where the officer in that case was alleging that there was a systemic precinct-wide policy to ensure that the officers, including the plaintiff in that case, were — that that policy had a detrimental effect to the community and was impairing the ability for the police officers to do good police work. In this case — I understand that that distinguishes this case from Matthews, but why is that an important distinction? I think it's an important distinction because in this case he was tasked to grade the exam that he says there was an alleged impropriety with. It was not a situation where he saw evidence of or suspected that there was systemic effort by the school administrators to boost the numbers of the tests, you know, in a way, and he was calling out that issue. In this case, it was a very specific exam that he was administering, one that he helped both on the setup side, making the answer key on the grading side, so he noticed it in the course of — in the course of doing that job, and he reported that. That's not protected speech under Garcetti and this Court's precedents. Unless this Court has any further questions. Thank you. Will you rebuttal? A couple of things. The case cited the Huntington case, I forgot the name of the plaintiff. That was done on a summary judgment motion when the record was completely developed as to what the job responsibilities were. And those complaints remained internal. They never went to the New York State Department of Education. They're clearly — this is — this is different than that case. In fact, all the cases cited and relied on came up on a summary judgment motion, not a motion to dismiss, except for one which I think was a Pence case. As far — Your Honor asked a very interesting question. In this particular case, I would argue there was a policy at that school, because we're not dealing with one student — one student that was — that — that had the benefit of possible coaching. There were a number of students that had the benefit of coaching. I think it was 10. And then my client went to the principal and went to the AP, and then — and to no avail. So I would respectfully submit, at least with respect to this particular school, that there was at least a de facto or informal policy which directly impacted the community, because if the reaching scores are elevated, it impacts the grading of the — of the school itself. When parents evaluate what school to choose to send their — their child to, they're going to look at, you know, the grading of the school. In this particular instance, there's nothing in the record to suggest it was his official job responsibilities. This motion was premature because we don't know what his job responsibilities were on the grade team. The suggestion here that he had to do — he had to do the answer keys and the specific responsibilities are not alleged in the complaint. It just says that he was part of a grading team. We don't know what he did, because this is on a motion to dismiss on a — on a complaint. This motion was premature at the very minimum, Your Honor. And I respectfully submit that this motion to dismiss should not be denied under the plausibility standard that this Court must apply de novo in this particular case. If you — on a plausible — plausibility standard on a motion to dismiss, okay, construing everything in light — in a light most favorable to my client, it was not part of his official job responsibilities. After he brought it to the attention of the AP, and after he brought it to the attention of the principal two or three times to go above their head and go outside the agency itself and report this to the New York State Department of Education. There's nothing in the record that suggests that. Thank you. Thank you both. We'll reserve decision.